UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

In re: ) Case No. 07-13703
)
JONATHAN M. WEBB, ) Chapter 13
)
       Debtor. ) Chief Judge Pat E. Morgenstern-Clarren
)
) **MEMORANDUM OF OPINION**
) **AND ORDER**

       In 2007, attorney Richard Eisenberg and his client Marilyn Polster re-initiated a foreclosure sale of the debtor's residence without obtaining relief from stay. The then-presiding bankruptcy judge held both in contempt and, in 2011, sanctioned them $4,405.23 in compensatory damages. On April 9, 2012, the Bankruptcy Appellate Panel of the Sixth Circuit affirmed the decision.[1]

       Seemingly undaunted, and again without obtaining relief from stay, on May 18, 2012 attorney Eisenberg filed with the state court another praecipe to re-initiate the foreclosure sale, at a time when the debtor still had not received a discharge and the case was open. The debtor filed this second motion to hold attorney Eisenberg and Marilyn Polster in contempt for violating the automatic stay, asking for both compensatory and punitive damages.[2]

**JURISDICTION**

       Jurisdiction over this matter exists under 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012.

---

[1] *In re Jonathan Webb*, Case No. 11-8016 (B.A.P. 6th Cir. filed April 9, 2012) (BAP opinion).

[2] Docket 123.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(O), and it is within the court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

## THE EVIDENTIARY HEARING

The court held an evidentiary hearing on the debtor's motion on August 17, 2012. The debtor presented his case through his own testimony and cross-examination of Mr. Eisenberg, together with exhibits that were accepted into evidence without objection. Mr. Eisenberg presented his case through his own testimony and cross-examination of the debtor. Ms. Polster presented her case through her testimony and cross-examination of Mr. Eisenberg.

These findings of fact are based on that evidence and reflect the court's weighing of the evidence presented, including determining the credibility of the witnesses. "In doing so, the Court considered the witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re The V Companies*, 274 B.R. 721, 726 (Bankr. N.D. Ohio 2002). *See* FED. R. BANKR. P. 9014(c) (incorporating FED. R. CIV. P. 52).

## FACTS AND DISCUSSION

### I. The § 362 Automatic Stay

Filing a bankruptcy petition operates to impose an automatic stay. *See* 11 U.S.C. § 362(a). The stay prevents "any act to . . . enforce any lien against property of the estate," and "any act . . . to enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the [bankruptcy] case[.]" 11 U.S.C. § 362(a)(4) and (a)(5). Consequently, "[c]ontinuation of foreclosure proceedings is specifically prohibited by

§ 362(a)."³ The stay continues (with exceptions not relevant here) as to acts against property of the estate until the property is no longer property of the estate, and it continues as to any other act until the earlier of the case being closed or dismissed, or the discharge being granted or denied.⁴ 11 U.S.C. § 362(c)(1) and (2).

An individual debtor who is injured by a willful violation of the automatic stay is entitled to recover damages. 11 U.S.C. § 362(k)(1). As the Bankruptcy Appellate Panel of the Sixth Circuit (BAP) stated in this case–

> A violation is willful if the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case. A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional. Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.⁵

Additionally, "a creditor's good faith belief that [his or her] intentional actions did not violate the automatic stay is not a defense to a § 362(k) action."⁶ "If the [creditor's] conduct is

---

³ BAP opinion at 16.

⁴ The BAP opinion determined that the property at issue was property of the debtor's estate at the time of the first stay violation. This court takes judicial notice of the debtor's confirmed plan (Docket 69), which provides that estate property is to re-vest in the debtor upon discharge, dismissal or completion of the plan, and of the trustee's final report (Docket 94), which states that the case completed on September 20, 2010. *See* FED. R. EVID. 201(b)(2) (made applicable by FED. R. BANKR. P. 9017); *Job v. Calder (In re Calder)*, 907 F.2d 953, 955 n. 2 (10th Cir. 1990). Based on those filings, the property had re-vested in the debtor when the respondents re-initiated the foreclosure sale in 2012.

⁵ BAP opinion at 17-18 (internal quotation marks and citations omitted).

⁶ BAP opinion at 18.

willful, even if based upon advice of counsel, contempt is an appropriate remedy." 3 COLLIER ON BANKRUPTCY ¶ 362.12[2] (16th ed. 2012).

A creditor and her attorney can be held jointly liable under § 362(k).[7] The BAP opinion notes on this point that "under 'general principles of agency law . . . a creditor-principal is liable under § 362(k) for the acts of an agent [i.e., an attorney] who willfully violates the automatic stay . . . when those acts are within the scope of their principal-agent relationship.'"[8]

"When a creditor willfully violates the automatic stay, § 362(k) requires a court to impose sanctions."[9] The debtor is entitled to "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The debtor has the burden of proof. *See Archer v. Macomb County Bank*, 853 F.2d 497, 499-500 (6th Cir. 1988). A debtor seeking punitive damages must show that the conduct was "'egregious, vindictive, or intentionally malicious.'" *In re Baer*, No. 11-8062, 2012 WL 2368698 at *10 (B.A.P. 6th Cir. June 22, 2012) (quoting *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004)). Although the standard does not require proof of overt wrongful intent, the debtor "must be able to make 'a strong showing that the creditor acted in bad faith or otherwise undertook . . . actions in reckless disregard of the law.'" *Id*.

---

[7] BAP opinion at 6-7 n. 4.

[8] *Id.* (quoting *Theokary v. Abbatiello (In re Theokary)*, 444 B.R. 306, 323-34 (Bankr. E.D. Pa. 2011) and collecting cases).

[9] BAP opinion at 24.

4

## II. The Polster Debt[10]

In 2003, represented by attorney Richard Eisenberg, Marilyn Polster and her now-deceased husband obtained a $10,000.00 state court judgment against Jonathan Webb and his mother Beverly Webb.[11] The Polsters filed a judgment lien against property owned by Ms. Webb at 902 Barkston Drive, Highland Heights, Ohio and commenced a state court action to foreclose on that lien. Ms. Webb transferred the property to Jonathan Webb while that lawsuit was pending.

The sheriff set the foreclosure sale for May 21, 2007. Jonathan Webb filed his chapter 13 case that same day, listing the Polsters as secured creditors. The sale did not go forward because of the bankruptcy filing.

## III. The First Violation of the Automatic Stay: 2007

At some point after that, without moving for relief from stay, attorney Eisenberg asked the state court to reset the sheriff's sale. On July 13, 2007, the sheriff set the sale for July 23, 2007. When Mr. Eisenberg did not respond to a letter from the debtor's counsel pointing out the violation, the debtor filed an emergency motion asking the bankruptcy court to hold both Ms. Polster and Mr. Eisenberg in contempt for violating the automatic stay, to award damages, and to enjoin the sale. The bankruptcy court[12] granted that motion under 11 U.S.C. § 362, ultimately awarding the debtor $4,405.23 in attorney fees as compensatory damages.

---

[10] These facts are taken from the BAP opinion.

[11] For ease of reference, the court will refer from this point forward solely to Marilyn Polster and not to her husband.

[12] The case was assigned at that time to the Honorable Randolph Baxter, now retired.

5

Mr. Eisenberg and Ms. Polster appealed to the BAP, with attorney Harvey Morrison representing them. On April 9, 2012, the BAP affirmed Judge Baxter's decision, providing a detailed discussion of how the appellants' actions violated the stay and warranted damages. The judgment is unpaid. Mr. Eisenberg recently told debtor's counsel that the judgment would be paid from Ms. Polster's proceeds of the house sale.

### IV. The Second Violation of the Automatic Stay: 2012

About five weeks after the BAP issued its opinion, Mr. Eisenberg filed a third praecipe for order of sale with the state court, asking it to order the sheriff to appraise, advertise, and sell the debtor's residence. He obtained half the $500.00 filing fee from Ms. Polster and paid the rest himself because Ms. Polster had begun to complain about the legal fees. The debtor's case was still open and the discharge had not been entered.

On June 12, 2012, the state court issued a notice that the sale would take place on July 16, 2012. When the debtor's counsel learned of this turn of events, he sent a letter to Mr. Eisenberg asking him to cancel the sale. Mr. Eisenberg did not respond.[13]

What, the reader may ask, was Mr. Eisenberg thinking to do exactly the same thing that had just resulted in an affirmed monetary judgment against both himself and his client? Mr. Eisenberg testified that he had a good faith belief that he could re-set the sale based on two interactions, one with Mr. Morrison and one with the office of a state court magistrate, and that he was entitled to rely on the advice he received from each of them.

---

[13] Although Mr. Eisenberg claims he did not receive the letter, the court does not find that statement to be credible.

6

### A. The Contact with Mr. Morrison

Mr. Eisenberg testified that he referred Ms. Polster to Mr. Morrison in 2007 to handle the bankruptcy aspects of her claim against the debtor. Mr. Morrison represented both Ms. Polster and Mr. Eisenberg on the appeal to the BAP. Before the BAP issued its judgment, Mr. Eisenberg emailed Mr. Morrison asking if anything prevented him from going forward with the sale, to which Mr. Morrison responded "hold off a little bit." After the BAP affirmed the damage award, Mr. Eisenberg sent another email to Mr. Morrison asking if he could go ahead with the sale. When Mr. Morrison did not respond, Mr. Eisenberg took that as a "green light" that he could proceed to sell the debtor's residence. He was, he believes, entitled to rely on "his counsel's" advice.

This interaction does not provide a defense to the stay violation. First, as the BAP held, good faith is not a defense to a willful violation of the stay. And neither is reliance on the advice of counsel. The BAP has already found that a lawyer and his client can both be held liable for a stay violation, so any incorrect advice that Mr. Morrison may have given would not automatically excuse Mr. Eisenberg's violation. Moreover, Mr. Morrison's failure to respond to an email cannot be said in these circumstances to be advice at all. There was no credible evidence as to what the email said or when or whether Mr. Morrison received it. In any event, silence is not the same as advice under these facts.

### B. The Contact with the State Court

Mr. Eisenberg also raises as a defense that he acted in good faith by relying on advice from a state court foreclosure magistrate in re-setting the sheriff's sale. He testified that he communicated with the magistrate, who reviewed the bankruptcy court docket and then said, in

7

effect, "the debtor is finished, you can go ahead and file your praecipe." On cross-examination, Mr. Eisenberg clarified that he went to the state court magistrate area, spoke with a woman at the front desk, and posed a question for the magistrate; she then went into the back, spoke to someone, and came back to report what that individual had said. The court discounts this testimony because it is too vague to be relevant. Mr. Eisenberg did not himself review the bankruptcy docket, although he acknowledges that he knew he could obtain the computerized docket through a PACER account. Additionally, Mr. Eisenberg, who has been practicing law for 49 years, knew that he could review the case record at the court without charge.

Mr. Eisenberg argued that he showed good faith by consulting the magistrate. Not only is good faith not a defense, but the court finds that a third-party "conversation" of this nature would not amount to a good faith effort to comply with the law in any event. As to the "advice of a magistrate" defense, the magistrate was not Mr. Eisenberg's lawyer and even if he were it would not be a defense, as discussed above.

Mr. Eisenberg committed a willful violation of the automatic stay, and he is liable to the debtor for damages. Unfortunately, his client Ms. Polster is similarly liable. She retained Mr. Eisenberg to represent her in this matter and authorized the filing of the third praecipe. Because Mr. Eisenberg acted within the scope of his authority, she is bound by the actions he took on her behalf.

The evidence showed that Ms. Polster is 82 years old and has no legal background whatsoever. She unquestionably relied on Mr. Eisenberg's advice when she provided $250.00 to be used toward the praecipe filing fee that Mr. Eisenberg used to rekindle the sheriff's sale. Reliance on the advice of counsel is not, however, a defense to a stay violation, although it may

8

provide a basis for a claim in another court at another time. *See In re Theokary*, 444 B.R. at 323-24 n.31.

## V. DAMAGES

### A. Compensatory Damages

The debtor asks for compensatory damages consisting of attorney fees, compensation for his and his family's emotional distress, lost wages, and out of pocket expenses. He proved that he lost $300.00 in wages and spent a total of $27.60 faxing the sale notice to his counsel and parking to attend hearings. He is entitled to recover those amounts.

The debtor is also entitled to his attorney fees. He submitted a detailed time and activity log from his attorney. The statement totals $5,500.00 in fees and $41.46 in expenses, all of which relate to the events that Mr. Eisenberg set in motion by filing the third praecipe. The activities undertaken, the time expended, and the rate charged are all reasonable.

Mr. Eisenberg argued that a state court might require a different format or procedure when seeking attorney fees, but the format and procedure used by the debtor are standard in the United States Bankruptcy Court. Moreover, they are identical to those submitted by the debtor in connection with the first violation and the BAP affirmed the fee award based on that documentation. While Mr. Eisenberg stated that he could not imagine why it cost so much for debtor's counsel to do the research and write the brief, the court must point out that Mr. Eisenberg does not have a factual basis for this criticism because he did not do any research on this issue nor did he present any testimony from a lawyer familiar with the issue. The debtor is, therefore, awarded an initial amount of $5,541.46 in attorney fees and expenses.

9

This amount covers the time period through August 2, 2012, with the debtor asking for leave to supplement the fee statement to include time through the evidentiary hearing date. That request is granted. The debtor is to file his supplemental statement on or before **September 4, 2012.** If there is an objection, that is to be filed by **September 18, 2012.** The court will decide the matter on those filings, only.

Having established economic damages, the third component of the debtor's request for compensatory damages is for the emotional distress that he and his children suffered when they received the state court notice re-setting their house for sale. The law in the Sixth Circuit is not settled regarding whether emotional distress damages are available as a remedy for violation of the automatic stay where the debtor has also proven economic damages. Regardless, the evidence here was too flimsy to support such an award because it consisted only of the debtor's statements that everyone in his family was upset. The request for damages for emotional distress is, therefore, denied.

### B.  Punitive Damages

Punitive damages are awarded in the trial court's discretion where the creditor acted in bad faith or otherwise acted in reckless disregard of the law. The court can think of no clearer example of reckless behavior than that exhibited here, where Mr. Eisenberg received an appellate judgment confirming damages against him based on his actions and then turned around and did essentially the same thing all over again. The court will, therefore, award punitive damages in the amount of twice the amount of compensatory damages against Mr. Eisenberg, only, as a deterrent against future behavior. The court will calculate that amount as part of the order that finalizes the attorney fee award.

10

In the exercise of the court's discretion, the court will not award punitive damages against Ms. Polster. Her behavior did not begin to rise to the same level as did Mr. Eisenberg's and it would be unjust to make her liable for punitive damages. *See* RESTATEMENT (THIRD) OF AGENCY § 7.03 cmt. e (2006) (noting that it is preferable not to award punitive damages against a principal who is vicariously liable without an additional showing of culpability on the part of the principal); *see also,* 11 U.S.C. § 105(a).

## **CONCLUSION**

The debtor's motion is granted. The court will enter a final judgment after determining the additional attorney fees to be awarded.

IT IS SO ORDERED.

_____
Pat E. Morgenstern-Clarren
Chief Bankruptcy Judge

11